THE PARK BANK IN THE CITY OF NEW YORK *v.* WOOD.

The act (ch. 654 of 1853), allowing corporations which have not received net annual profits equal to five per cent upon their capital, to commute for taxes is applicable only to corporations which have been in existence for a full year before the assessment is made.

Held, accordingly, that a bank which had been organized only three months was liable to be taxed for the full amount of its capital, though its income and profits were less than five per cent.

APPEAL from the Supreme Court. Case agreed upon pursuant to section 372 of the Code, and submitted without action. The Park Bank claimed that it was not liable to taxation on its capital stock until one year from the date of its commencing its banking business on the 31st of March, 1856. In July, 1856, it was assessed upon such capital by the assessors of the City of New York, the tax amounting to $21,000. It claimed to commute by paying $2,400, being five per cent upon the net profits or clear income which had accrued from its business. This claim being rejected by the board of supervisors, the case was submitted to the Supreme Court at general term. The decision was against the bank and it appealed to this court.

*Charles O'Conor*, for the appellant.

*Amasa J. Parker*, for the respondent.

LOTT, J. It was provided by an act of the legislature, passed July 21, 1853 (ch. 654), that any incorporated company named in an assessment-roll upon proof mode to the board of supervisors, as therein required, that it had "not been during the preceding year in the receipt of net annual profits or clear income, equal to five per cent" on the capital stock paid in or secured to be paid in after deducting therefrom the assessed value of its real estate, should be "entitled to commute for their taxes on such capital stock by paying directly to the treasurer of the county in which the business of such company is transacted, a sum equal to five per cent on such net annual profits or clear income, and also such further sum as shall have been assessed on such roll as the taxes on their real estate."

The Park Bank claimed the right of commutation under that act, and in the proof made to the Board of Supervisors of the City and County of New York at their annual meeting in July, 1856, it appeared that it was a banking association duly organized under the general banking law on the 12th of March in that year, but did not proceed to carry on any banking

The Park Bank *v.* Wood.

business, except to call in its capital and take other steps preparatory thereto, till the 31st day of March thereafter; that its capital stock paid in or secured to be paid in was two millions of dollars, and that its clear income from the period of its organization till the time such exemption was claimed in July amounted to and did not exceed the sum of forty-eight thousand and five dollars and seventy-nine cents, being less than five per cent on its capital after the deduction of the assessed value of the real estate, which was one hundred and twenty-five thousand dollars. Upon these facts, the question is presented whether this bank was entitled to the privileges claimed by it under the provision of the act above referred to. As a general rule the whole of the capital stock of banks, except such as is held by the State or incorporated literary and charitable associations, is liable to taxation, and no regard is had to the time during which they have carried on business. It is the duty of the assessors to include all in the assessment-roll, and they are to be charged by the board of supervisors with their proportional share of the public burdens on such capital. The provision of law above referred to was an innovation upon a long established system and continued in force only till 1857, when it was repealed. (Laws of 1857, ch. 456, § 1.) It was a special privilege granted, and the corporations claiming it were bound to furnish the board of supervisors with the requisite proof to entitle them to it, within two days from the commencement of their annual meeting. It was, therefore, an exception to a general rule, and it should appear that a corporation was clearly within the exception before it should be permitted to discharge itself from its just proportion of the public burden, to the prejudice of other taxpayers. One of the requirements to entitle a bank to its benefit, in my opinion, is, that it should have been in existence for a year previous to the annual meeting of the board of supervisors. The law requires that it should be shown that the company has not been "during the preceding year in the receipt of net *annual* profits or clear income equal to five per cent on its capital stock," &c., and the commutation is to be based on such net annual profits

or clear income. It contemplates that the corporation shall have been in business during a whole year. It is in such cases only that annual profits or income can accrue. It was no doubt the object of the law to relieve all incorporated companies from taxation on their capital when their business was not sufficiently profitable to justify the imposition of the ordinary burden to which property is subject for the support of government. A year preceding the usual time designated for imposing taxes was fixed as the period for determining that fact, and therefore the annual profits were the test of success, and formed the basis of taxation. Such, indeed, is claimed to be the construction of the law by the bank. It says that "the effect of the words is, and the intent was, that corporate capital should not be fully taxed in its corporate form until it had been one year successfully operating; and that whenever corporate operations were unsuccessful, like indulgence should be allowed." It is claimed, in other words, that if it should appear that corporations which have been in existence for less than a year, have been prosperous and have during the time they have carried on their business, realized more than five per cent on their capital, that they nevertheless could not be taxed on the whole capital, and consequently that their corporate existence for a year and the receipt of profits to the amount specified, were both "prerequisite to *liability*," on the part of a corporate company, to be taxed in the usual way.

Assuming, therefore, that the law in question has application only to such incorporated companies as have been in existence for a whole year preceding the annual meeting of the board of supervisors, it, in my opinion, follows as a necessary consequence that the claim of the Park Bank was properly refused. The fact of such existence during that time is a prerequisite to the right of commutation, and not to the ordinary mode of taxation. The law does not prescribe a new rule of taxing corporations, but merely gives them the privilege of relieving themselves from the operation of that rule upon showing certain facts to the satisfaction of the board of supervisors. In the present case the material fact necessary to be

The Park Bank *v.* Wood.

shown, the corporate existence of the bank for a whole year, was wanting. There was, moreover, no basis on which the commutation could be made. There were no "net *annual* profits or clear income" on which it could be estimated. It was impossible, therefore, to include it within the privileged class of corporations, and it has no ground of complaint when it is subjected to the same rule of taxation which is applicable to the community generally. A different construction would lead to results which could not have been intended by the legislature. The rule contended for by the appellant would relieve all capital that had been invested in an incorporated company at any time within the year, from its ordinary burden of taxation, although profits far exceeding five per cent had accrued thereon both before and after its investment.

The law should not be so construed as to produce such a result if any other meaning can reasonably and fairly be given to it, and the views above expressed show that such a construction is not only unnecessary but unwarranted.

The judgment of the Supreme Court should therefore be affirmed, with costs.

All the judges concurred, except

SELDEN, J. (Dissenting.) According to the statement contained in the case, it was shown by the affidavit of the cashier "to the satisfaction of the board of supervisors, that the said corporation had not been, during the preceding year, in the receipt of net annual profits or clear income equal to five per cent on the capital stock of said corporation paid in, or issued to be paid in" after deducting the assessed value of its real estate. This brought the bank plainly within the terms of the Act of 1853. The supervisors could not have rejected the claim to commute on the ground that the case did not come within the letter of the act, because the affidavit, as stated in the printed case, was in precise accordance with the language of the act. It contained everything which the statute in terms requires to be shown, and its statements were borne out by

the conceded facts of the case. The bank clearly had not "during the preceding year" received annual profits equal to five per cent upon its capital.

The only ground, therefore, which the supervisors could take in refusing the claim to commute was, that although the statute, in terms, embraces every corporation, for however short a time it may have existed, nevertheless it was intended to apply only to corporations which have existed for an entire year prior to the period of assessment; and this no doubt is the ground upon which that refusal was actually placed.

· The power of construing statutes according to their spirit and intent in opposition to their letter, is one to be exercised with great caution. The language of legislatures is the best evidence of their intention, and it is only where it is clear that something different was meant, that courts are justified in departing from it. Sometimes where—from a consideration of the subject matter of a statute, and the general scope of its provisions—its precise object is plain, courts are warranted in adopting a construction at variance with the strict, literal import of its terms, if necessary to accomplish that object. There are however, few statutes which are less likely to present such a case than those which relate to taxation. As the power of the legislature to tax, or exempt from taxation, is entirely unlimited, and as it is impossible that the laws on that subject should be so adjusted as to operate with perfect equality, it would be dangerous to depart from the letter of such a statute, upon any considerations of mere justice or equity. Unless the motives and intent of the legislature are plain, and the court can see with perfect distinctness that the language used does not express that intent—if the intention is in any degree a matter of specu lation—the only safe course is to interpret the statute according to its letter.

The act under consideration provides that any corporation which shall show by affidavit that it has not during the preceding year made an annual profit or clear income equal to five per cent upon its capital, shall be entitled to commute. The respondents contend that this means any corporation

The Park Bank *v.* Wood.

which has existed for a year. Upon what ground can this be claimed? There is nothing in the language which imports it. It is not implied, as the counsel seem to suppose, in the word "during," or "annual." These words simply measure the period within which the profits must have accrued. Only such are to be estimated as have accrued within the preceding year, and they must be strictly annual profits, that is, profits belonging appropriately to the business of the year for which they are estimated. The words do not necessarily mean anything more than this.

The construction contended for, therefore, can only be claimed upon the ground that the act, if interpreted literally, is unreasonable: that it would operate unequally or unjustly. But how is it possible for the court to say, that the legislature may not have had reasons for extending some indulgence to corporations just commencing their business. Some time is necessarily lost in taking private capital and investing it in the business of a corporation. It takes time to organize a corporate body, and to put its machinery in operation. Corporations are created, or supposed to be created, for public purposes, and whether they should be encouraged or not is a question for the legislature alone.

If the respondents are right, the affidavit produced by the corporation must show not only that such corporation has not made profits during the year equal to five per cent (which is all that the language of the act requires), but the additional fact, that the corporation has existed for an entire year; concerning which there is not a word in the statute. This requirement must be interpolated, therefore, purely on account of its supposed reasonableness, in order to justify construing the statute as contended for by the respondents. It would require, I think, clearer evidence of the legislative intent to warrant such an interpolation, even if this statute did not relate to taxation. But when it is considered that taxation is a power which the government exercises in its own favor: that its discretion is unlimited; and that in this form it may take from the citizen whatever it pleases, it is no more than reasonable that statutes

imposing taxes, if ambiguous or of doubtful import, should be construed most favorably to the party to be taxed.

The judgment in this case should, I think, be reversed, and judgment should be rendered for the plaintiffs for the sum of $21,360, with interest from the 2d September, 1857.

Judgment affirmed.