ABRAHAM B. HASBROUCK AND OTHERS, APPELLANTS, *v.* THE KINGSTON BOARD OF EDUCATION, ELIJAH ELLSWORTH, COLLECTOR, AND CORNELIUS BURHAUS, TREASURER OF THE KINGSTON SCHOOL DISTRICT, RESPONDENTS. THE PEOPLE OF THE STATE OF NEW YORK, APPELLANTS, *v.* THE SAME DEFENDANTS, RESPONDENTS.

*Injunction—Tax illegally assessed—Remedy what—Code,* § 11.

An application for a preliminary injunction is addressed to the discretion of the Court; and although the Appellate Court may require the discretion to be exercised, it will not assume to control such discretion.

An order refusing to grant such injunction does not come within subdiv. 2 of § 11 of the Code of Procedure, and is not appealable to this Court.

It seems that an injunction cannot legally be granted to restrain the collection of a tax, although illegally assessed; the proper remedy is by action for damages, etc.

THESE appeals both embrace the same tax and raise the same questions. They are appeals from orders of the General Term, affirming orders at Special Term, denying motions for temporary injunction to restrain the collection of the same tax, and disbursement of the moneys.

The Kingston Board of Education was incorporated by an act of the Legislature, passed in 1863, and amended in 1864 (Laws of 1863, chap. 360; Laws of 1864, chap. 40), for the establishment and maintenance of free public schools in the Kingston school district; and the said act, as amended, provides that the said Board of Education shall have power, and it shall be their duty to raise, from time to time, by tax, to be levied upon all the real and personal estate in the Kingston school district, "such sums as they may determine to be necessary and proper for the payment of the salaries of the superintendent and teachers in the public schools under their charge, repairs of school-houses, fences, out-buildings, and grounds belonging thereto, and all other necessary and contingent expenses for establishing and maintaining the said public schools, and the necessary and contingent expenses of the Board of Education."

The Board of Education, in the spring of 1866, determined that it was necessary and proper to raise by tax the sum of $22,000, to meet deficiencies of the last, and the expenses of the then current year, for the purpose aforesaid; and thereupon levied and assessed a tax for that sum, and delivered the tax-roll, with the usual warrant for its collection, on the fourth day of June, 1866, to the Defendant, Ellsworth, for its collection.

On the 16th of July, 1866, and after nearly $14,000 in amount of the tax had been collected, and a portion thereof disbursed, Abraham B. Hasbrouck and four others, in behalf of themselves and "all other taxable inhabitants and other persons having property liable to taxation in the Kingston school district," commenced the first above-entitled action against the Board of Education, their collector and treasurer, to restrain them from the collection of that part of the tax remaining uncollected, and from paying out, disbursing, and appropriating the moneys collected.

At the Special Term of the Supreme Court held in July, 1866, the Plaintiffs in the first-entitled cause applied for a temporary injunction, to restrain the collection of the tax and disbursement of the moneys collected during the pendency of the suit. That motion was denied, and the injunction refused. From that decision an appeal was taken to the General Term of the Third District. The order at Special Term was there affirmed, and from that affirmance an appeal was taken to this Court, and that is the appeal first above entitled.

After the denial of the injunction in the first cause, as above stated, an action was commenced in the name of the People, by the attorney-general, containing substantially the same allegations as those contained in the other cause, demanding judgment for a perpetual injunction to restrain the levy, assessment, and collection of any taxes by the Defendants, without the authority of the inhabitants, other than for certain limited purposes, and for those purposes not exceeding $5,000; and to restrain any further proceedings in the collection of the taxes then assessed, and disbursement of the moneys, and for other relief.

A motion for a temporary injunction to restrain the collection

of the tax and disbursement of the moneys was made in that cause, and was denied. The order denying it was appealed from to the General Term.

The General Term affirmed the order, and an appeal was taken to this Court from the decision at the General Term, which is the appeal secondly above entitled.

*E. Cooke* for Appellants.

*M. Schoonmaker* for Respondents.

HUNT, J.—The objection is made, that the orders in question are not appealable to this Court. I think the objection is well taken.

It is claimed that the appeal is sustainable under sub. 2 of § 11 of the Code, which gives such appeal from " an order affecting a substantial right . . when such order in effect determines the action, and prevents a judgment from which an appeal might be taken," or discontinues the action, or grants or refuses a new trial. The order in question does not determine the action or prevent a judgment from which an appeal might be taken. It may possibly prejudice the Plaintiffs to the extent of that portion of the tax of 1866 yet uncollected; but the action remains with the question to be decided by it for future years, and with the power of appeal from the judgment to be rendered. If it shall be held ultimately that the Plaintiffs are right, then the Defendants, in their levies, will be restricted to $5,000 a year, or be limited to the specific items admitted by the Plaintiffs to be properly within their jurisdiction.

If the Defendants' view is sustained by the Courts, they will be at liberty the next year, and so long hereafter as the law shall remain unrepealed, to levy such sums as they may determine to be necessary and proper for the purposes specified in the act. There is evidently much the most important duty of the action yet to be performed.

The amount of the present tax, yet uncollected, is trifling compared with the amount which will be determined by the judgment yet to be rendered. The orders in question do not in

effect determine the action, or prevent a judgment from which an appeal can be taken, and are therefore not appealable to this Court.

Again. The papers do not show whether the motion was denied upon the ground that the Plaintiffs could ultimately have no relief, or because a temporary interference was not advisable. In the latter case the motion below was addressed to the discretion of the Court; and the General Term having acted, we cannot review their determination (The People *v.* The New York Central R. R. Co., 29 N. Y. R. 418; Clark *v.* City of Rochester, 34 id. 355). Whether the interests of the individuals who had not yet paid their tax should command the interposition of that tribunal, or whether the interests of education were the more important in the particular case, were matters for the discretion and judgment of the Court below. In such cases we require them to act, but we do not assume to determine what their action shall be (auth. sup.).

I am of the opinion, also, that an injunction cannot legally issue to restrain the collection of a tax, although illegally imposed (Haywood *v.* The City of Buffalo, 14 N. Y. 534, 537; Mutual Benefit Life Ins. Co. *v.* Supervisors of N. Y., 32 How. 359). · The party must take his remedy by action for the damages he has sustained (ib.).

Upon the merits, I am also of the opinion that the action of the Board was legal. Section thirteen of the act in question, as originally passed, authorized the Board, and made it their duty "to raise, from time to time, by tax, . . . . such sum, not exceeding in all $5,000 in any one year, as they may determine to be necessary and proper, and such additional sum as the taxable inhabitants at an annual meeting may direct to be raised, not exceeding the like amount of $5,000 as aforesaid, for any and all of the purposes to which the powers and duties of the said Board extend, as hereinafter mentioned " (Laws 1863, p. 597).

The evident intent of this act was to limit the power of the Board to the sum of $5,000 as the amount authorized to be raised on their own discretion in any one year.

If, however, the taxable inhabitants should think proper to order the raising of an additional sum of the like amount, then it became the duty of the Board to raise that amount also; all of which sums were to be applied indiscriminately to the purposes to which the powers of the Board extended.

In 1864 (ch. 40, § 1), the section in question was amended, so that it reads as follows : "§ 13. The said Board of Education shall have power, and it shall be their duty to raise, from time to time, by tax, to be levied," &c., "such sums as they may determine to be necessary and proper for the payment of the salaries of the superintendent and teachers in the public schools under their charge, repairs of school-houses, fences, out-buildings, and grounds belonging thereto, and all other necessary and contingent expenses for establishing and maintaining the said public schools, and the necessary and contingent expenses of the Board of Education. And they may also raise such additional sum, not exceeding $5,000 in any one year, as the taxable inhabitants of said Kingston school district may at any meeting, regularly called, authorize or direct, for the purchase of school-houses, lots or sites for school-houses, and to defray the expenses of the erection, altering, and improving school-houses, out-houses, and their appurtenances, or for such other purposes as are included within the powers and duties of the Board of Education as hereinafter mentioned."

Although there may be difficulty in giving an accurate grammatical or technical reading to this language, there is but little difficulty in ascertaining its meaning.

For the ordinary current expenses of maintaining the school system organized by the act, such as teachers' salaries, repairs of buildings, and contingent expenses, the Board were authorized to raise money in their discretion, and without limit as to the amount.

If it was desired to purchase school-houses, or lots on which to erect school-houses, or to alter or improve in a prominent manner the school buildings in use, permission or authority was to be obtained from the taxable inhabitants duly assembled. The fact

that such meeting might direct the raising of moneys for other purposes included within the powers of the Board does not interfere with this construction. It was simply superfluous. The Board already had the power.

Neither do I see any difficulty to arise if it should be held that a like power was intended to be given to the citizens when regularly assembled as directed by the act.

Under the decision in Ketchum *v.* The City of Buffalo (14 N. Y. R. 361), the power " to establish and maintain schools " is very comprehensive, and if needed for that purpose would give large powers to the Board in question. There is no evidence in the present case that the Board have attempted to raise money for any other than legitimate purposes.

The adoption of the statement set forth in the complaint as the ground of their levy is expressly denied, and it is averred that the proposed levy was made for the purpose of providing for the payment of the salaries of the superintendent and teachers, repairs to the school-houses, and other contingent expenses, and to pay arrears for the same purpose, for which they were indebted. These were properly and legitimately within their control.

Both upon the form and upon the merits, I am of the opinion that the appeals should be dismissed, with costs.

All concur.

Appeals dismissed.

Wright and Porter JJ. not voting.