67 F.3d 295
 19 Employee Benefits Cas. 1997
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
HCA HEALTH SERVICES OF VIRGINIA, INCORPORATED, Plaintiff-Appellant,
v.
AMERIHEALTH, INCORPORATED, and its attached affiliates
Employee Health Care Plan, Defendant-Appellee,
and Sit 'N Sleep Centers, Incorporated, Employee Welfare
Benefit Plan, Defendant.
HCA Health Services of Virginia, Incorporated, Plaintiff,
and Sit 'N Sleep Centers, Incorporated, Employee Welfare
Benefit Plan, Defendant-Appellant,
v.
Amerihealth, Incorporated, and its attached affiliates
Employee Health Care Plan, Defendant-Appellee.
 Nos. 94-1623, 94-1624.
 United States Court of Appeals, Fourth Circuit.
 Sept. 11, 1995.
 
 Robert Thomas Adams, McGuire, Woods, Battle & Boothe, Richmond, Virginia; Kirk David McQuiddy, Morris & Morris, Richmond, Virginia, for Appellant. on brief: Shannon E. Sinclair, Karen S. Iezzi, McGuire, Woods, Battle & Boothe, Richmond, Virginia; James W. Walker, Morris & Morris, Richmond, Virginia, for Appellant.
 David Edward Constine, III, Mays & Valentine, Richmond, Virginia, for Appellee. on brief: Evelyn E. Small, Mays & Valentine, Richmond, Virginia, for Appellee.
 Before WIDENER and MICHAEL, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 After a bench trial the district court entered a declaratory judgment that Lauren Jenkins, a deceased child, did not meet the dependent eli gibility requirements of her father's ERISA-governed health care plan. The owner of the hospital where Lauren was a patient and her mother's health care plan both appeal. We affirm.
 
 I.
 
 2
 On October 21, 1991, Lauren Jenkins was born three months prematurely at Henrico Doctor's Hospital, a hospital owned and operated by HCA Health Services of Virginia, Inc. (HCA). She was hospitalized there for four and one-half months until her death on March 8, 1992. The hospital bill for Lauren's care totalled $541,977.33.
 
 
 3
 Lawrence Jenkins, Lauren's father, participated in his employer's health care plan, the AmeriHealth, Inc. Plan (AHI Plan). Cheryl Randolph, Lauren's mother, participated in her employer's health care plan, the Sit'N Sleep Plan (SNS Plan). Mr. Jenkins and Ms. Randolph were not married and lived apart. Mr. Jenkins rented an apartment in the City of Richmond, and Ms. Randolph owned a home in Chesterfield County. Both parents, however, timely enrolled Lauren as a "dependent" under their respective health insurance plans.
 
 
 4
 Mr. Jenkins's AHI Plan disputed coverage. Ms. Randolph's SNS Plan admitted coverage but contended that its liability was secondary to the AHI Plan. The dispute caused HCA, as the assignee of both parents, to file a declaratory judgment action against both plans under ERISA, 29 U.S.C. Sec. 1001 et seq.
 
 
 5
 The district court "determine[d] that Lauren cannot be considered a[n] eligible dependent" under her father's AHI Plan. The court also noted that "all parties have consistently agreed" that there was secondary coverage for Lauren under her mother's SNS Plan. HCA and the SNS Plan now appeal the judgment entered in favor of the AHI Plan.
 
 II.
 
 6
 This appeal presents a straightforward dispute concerning the construction and application of the AHI Plan's dependent eligibility provisions. The sole issue is whether Lauren Jenkins was covered under the terms of that Plan.
 
 A.
 
 7
 Because the AHI Plan administrator lacked discretion to interpret the Plan's terms, we first consider de novo whether the district court correctly interpreted the Plan. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); see Quesinberry v. Life Ins. Co., 987 F.2d 1017, 1022 n. 3 (4th Cir.1993) (en banc) (noting that if a plan vests the administrator with discretion, then our review of the administrator's decisions will, in turn, be deferential).
 
 
 8
 The AHI Plan's "Dependent Eligibility" provision provides in pertinent part as follows:
 
 
 9
 The term Dependent means your spouse and your dependent unmarried children....
 
 The term children means:
 
 10
 (a) your natural children;
 
 
 11
 (b) adopted children ...;
 
 
 12
 (c) step children; and
 
 
 13
 (d) foster children;
 
 
 14
 (e) any other children related to you by blood or marriage,
 
 
 15
 provided they are dependent upon you for the majority of his or her support.
 
 
 16
 Acceptable proof of dependency will be the listing of the dependent child in the enrollees most recent Internal Revenue Tax Statement.
 
 
 17
 (Emphasis supplied.)
 
 
 18
 The district court first concluded that the "majority of support" proviso applies to each of the five categories of children, and we agree with that interpretation. The definition of the term "children" appears in a single sentence with a qualifying clause that modifies each of the five categories of children. The document's tabular format also reinforces the conclusion that the "majority of support" proviso applies to each category. In short, we believe that the district court's determination was dictated by the plain language of the AHI Plan.[1]
 
 B.
 
 19
 We next turn to the district court's factual finding that Mr. Jenkins did not provide the majority of Lauren's support. We will disturb this finding only in the event of clear error. See Fed.R.Civ.P. 52(a).
 
 
 20
 At trial both Mr. Jenkins and Ms. Randolph testified, and the court considered a stipulation that included facts about their relationship.
 
 
 21
 Mr. Jenkins saw Ms. Randolph at least four times a week, and they planned to get married after Lauren's birth. During Ms. Randolph's pregnancy Mr. Jenkins gave her "five or ten dollars here or there [to] help her out" with expenses such as gas or groceries. However, on cross-examination Ms. Randolph admitted that Mr. Jenkins did not provide any money for her "pre-natal [medical] expenses." These expenses were considerable. They included the costs of Ms. Randolph's monthly visits to her obstetrician, one visit to another doctor, and one six- to seven-hour visit to the hospital due to pregnancy-related complications. Ms. Randolph's SNS Plan paid for a large portion of these expenses, and she paid all deductibles and co-payments. Ms. Randolph's portion was "probably" more than $1,000, and Mr. Jenkins contributed nothing.
 
 
 22
 On October 21, 1991, the day of Lauren's birth, Mr. Jenkins went with Ms. Randolph for her admission to the hospital. Despite Jenkins's presence, Ms. Randolph's sister, Vanessa Randolph, signed the admissions form as Ms. Randolph's agent. The form specifically obligated Vanessa Randolph (even as agent) "to pay the account of the hospital" for the services rendered. Mr. Jenkins thus assumed no written obligation to pay the hospital. The hospital charges for Lauren's care were billed solely to her mother.
 
 
 23
 The parties stipulated that from Lauren's birth until her death, "Henrico Doctor's Hospital provided for [her] physical needs, including food, shelter, clothing and day-to-day care." Both Mr. Jenkins and Ms. Randolph visited Lauren regularly in the hospital. Mr. Jenkins testified that he and Ms. Randolph did buy some clothes and gifts for Lauren "both before and after she was born," sharing "those costs equally."
 
 
 24
 Despite several requests from the AHI Plan, Mr. Jenkins did not provide any documentation to the Plan to support his assertion that he provided a majority of Lauren's support. Nor was any such documentation provided at trial.
 
 
 25
 In light of this evidence we cannot say that the district court was clearly erroneous in finding that Mr. Jenkins did not provide the majority of Lauren's support.[2]
 
 III.
 
 26
 We affirm the district court's determination that Lauren Jenkins was not an eligible dependent under her father's AHI (health insurance) Plan. The judgment is therefore
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 The AHI Plan's provisions defining an eligible dependent must be distinguished from the Plan's provisions setting the eligibility date for dependent coverage. The coverage date provisions provide that:
 You become eligible for Dependent coverage on:
 (a) the date you become eligible, if you have an eligible Dependent at that time; or
 (b) the date you first acquire an eligible Dependent.
 Your Dependents will be covered on the later of:
 (a) the date you become eligible for Dependent coverage, if you complete the necessary enrollment form on or before that date; or
 (b) the date you complete the necessary enrollment form, if you do so within one month after the date you become eligible for Dependent coverage;
 provided they are not then in the hospital.
 If a Dependent is in the hospital, the coverage for that Dependent will become effective on the day following the date of discharge. A natural child born to you or your spouse while you are covered for Dependents will be covered even though the child is in the hospital. Coverage will become effective on the child's date of birth if you are covered with respect to Dependents on that date.
 This language does not define an eligible dependent. Eligible dependents are defined as we explained in the earlier text. Because (as indicated in part II.B.) Lauren Jenkins does not qualify as an eligible dependent, we have no occasion to apply the provisions addressing the effective date of coverage.
 
 
 [2]
 Mr. Jenkins did not list Lauren as a dependent on his tax returns. Accordingly, he did not fit within the AHI Plan provision that such a listing is "[a]cceptable proof of dependency."